IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


SEAN M. STEELE,

      Plaintiff,

                                Civil Action 2:18-cv-01503
                                Judge James L. Graham
  v.                             Chief Magistrate Judge Elizabeth P. Deavers


LT. NICHOLAS NEFF, *et al.*,

      Defendants.


## **REPORT AND RECOMMENDATION**

This matter is before the Court for consideration of the Motion to Dismiss Plaintiff's Amended Complaint filed by Defendants Lt. Nicholas Neff, Lt. Doug Byrd, Brandi Glore, Caroline Harris, and Darryl May (ECF No. 22), Plaintiff's "Motion in Opposition," construed as a Response in Opposition (ECF No. 27), and Defendants' Reply (ECF No. 30).  For the reasons that follow, it is **RECOMMENDED** that Defendants' Motion to Dismiss (ECF No. 22) be **GRANTED**.

## **I. BACKGROUND**

Plaintiff Sean M. Steele is an inmate currently incarcerated at the Trumbull Correctional Facility.  (ECF No. 22 at 2.)  During the events described in Plaintiff's Amended Complaint, he was incarcerated at the Pickaway Correctional Institution ("PCI").  (ECF No. 9 at 2.)  Plaintiff brings civil rights claims against PCI employees under 42 U.S.C. § 1983, asserting a violation of his Fourteenth Amendment due process rights stemming from a Rules Infraction Board ("RIB") proceeding at the institution.  (ECF No. 9.)  Plaintiff alleges from June 29 to July 18, 2018, he

was placed in the Transitional Programming Unit ("TPU") while an investigation was conducted by a PCI investigator. (*Id.* at 5–6.) He states that on July 16, 2018, he received a copy of a conduct report for "dealing" and on July 17, 2018, RIB conducted a hearing on the conduct report. (*Id.* at 5–6, Exhibit 7). The RIB Chairperson, Defendant Lt. Byrd, found Plaintiff to be not guilty of "dealing". (*Id.*)

On July 20, 2018, Plaintiff alleges that he was again taken to TPU due to a new conduct report prepared by Defendant Lt. Neff regarding a fight that took place in general population and the yard on July 8, 2018. (*Id.* at 6, 8, Exhibit 2.) Plaintiff maintains that, because he was in TPU at the time of the alleged fight, he could not have possibly been involved in it. (*Id.* at 6.) He therefore believes that the conduct report was false and was prepared by Defendant Neff as retaliation for Plaintiff being found not guilty in the previous RIB proceeding. (*Id.* at 6–7.) At the RIB hearing for the new conduct report, the Chairperson, Defendant Lt. Byrd, found Plaintiff not guilty for fighting but found him guilty for engaging in unauthorized group activity. (*Id.* at 10–11, Exhibit 3.) Defendant Lt. Byrd sentenced Plaintiff to 30-days of continued placement in TPU and requested a security level increase and transfer. (*Id.*)

Plaintiff was provided with a copy of the Disposition of the RIB proceeding. (*Id.* at 11–12.) He claims that the document does not provide a written statement of the evidence relied upon. (*Id.* at 11–12.) A copy of this document with Plaintiff's annotations is attached to the Amended Complaint. (*Id.* at Exhibit 3.) The document asks the Chairperson to "[s]tate the facts that explain the board's decision." (*Id.*) The Chairperson answered "[t]he Board believes the conduct report to be true and factual as written." (*Id.*) Plaintiff appealed the decision to Defendant May, who upheld the decision. (*Id.* at Exhibits 3, 4.) Defendant Glore conducted a security review following the RIB decision and ultimately agreed with the recommendation that

his security level be increased from level 2 to level 3.  (*Id.* at 13, Exhibit 5.)  Plaintiff then requested the paperwork necessary to appeal this decision.  He claims, however, that he did not receive the required paperwork in a timely fashion as a result of the actions of Defendants Glore and Detty.  (*Id.* at 13–15, Exhibit 5.)  Defendant Harris approved the security level increase before receiving Plaintiff's appeal.  (*Id.* at 17–18, Exhibit 5.)  Plaintiff was transferred to Trumbull Correctional Institution on August 16, 2018.  (*Id.* at 17.)

Plaintiff contends that Defendants violated his due process rights under the Fourteenth Amendment by failing to provide a written statement of the evidence relied upon and reasons for the disciplinary action he faced at the PCI.  (ECF No. 27 at 6.)  In the Amended Complaint, Plaintiff describes a series of events that he claims were a result of the false report and the failure of Defendant Lt. Byrd to provide a written explanation in the RIB Disposition document.  (ECF No. 9.)  Plaintiff contends that this alleged due process violation resulted in an additional 30-days placement in TPU, being labeled a gang leader, loss of his prison job, deprivation of his level 2 security status, transfer to a higher security prison farther away from his home, economic hardship from bringing forth this lawsuit, and the potential to affect his parole eligibility. (*Id.* at 18–20.)

Defendants move to dismiss Plaintiff's Amended Complaint on several bases, asserting that the declaratory relief sought by Plaintiff is moot, Plaintiff's official capacity claims are barred by the Eleventh Amendment, Plaintiff has not met the requirements for punitive damages, Plaintiff fails to state a claim upon which relief can be granted under 42 U.S.C. § 1983, and qualified immunity applies and bars all of Plaintiff's claims.  (ECF No. 22.)

## II. STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd.*, *P'ship v. Flagstar Bank*, *F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013) (emphasis in original).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted).

In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio*

*Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).  However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663.  Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice.  *Flex Homes, Inc. v. Ritz–Craft Corp of Mich., Inc.*, 491 F. App'x. 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

In addition, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### III. ANALYSIS

Plaintiff brings his due process claims against Defendants under 42 U.S.C. § 1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

In order to proceed under § 1983, a plaintiff must prove both that (1) the perpetrator acted under color of state law; and (2) the conduct deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *Parratt v. Taylor*, 451 U.S.

527, 535 (1981); *Brandon v. Allen*, 719 F.2d 151, 153 (6th Cir.1983), *rev'd and remanded sub nom*, *Brandon v. Holt*, 469 U.S. 464 (1985). Section 1983 merely provides a vehicle for enforcing individual rights established elsewhere and does not itself establish any substantive rights. *See Gonzaga Univ. v. Doe,* 536 U.S. 273, 285 (2002).

Plaintiff asserts that the constitutionally protected interest at issue here is the right to receive a written statement of the evidence relied upon in a disciplinary decision. Specifically, Plaintiff claims that he did not receive a constitutionally sufficient written statement when he was found guilty of engaging in unauthorized group activity as a result of what he asserts was a false conduct report. (ECF No. 27 at 6, 10–11.)

In order to establish a procedural due process violation under Section 1983, Plaintiff "must show that the state deprived him or her of a constitutionally protected interest in 'life, liberty, or property' without due process of law." *Swihart v. Wilkinson*, 209 F. App'x 456, 458 (6th Cir. 2006) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). As applied to a prisoner, "[t]he 'Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact . . . .'" *Bazzetta v. McGinnis*, 430 F.3d 795, 804 (6th Cir. 2005) (quoting *Sandin v. Conner*, 515 U.S. 472, 478 (1995)). A prisoner is entitled to due process under the Fourteenth Amendment only when a protected liberty interest is at issue. "Without a protected liberty interest, [a prisoner] cannot successfully claim that his due process rights were violated because 'process is not an end in itself.'" *Ford v. Harvey*, 106 F. App'x 397, 399 (6th Cir. 2004) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983)).

In support of his argument, Plaintiff relies principally upon *Wolff v. McDonnell*, 418 U.S. 539 (1974). In *Wolff*, the Supreme Court addressed the procedural requirements for a prison disciplinary hearing where loss of good-time credits was at stake. *Id.* The Court held that due

6

process requires: (1) written notice of the charges at least 24 hours before the hearing, (2) a written statement of the evidence relied upon and reason for the action taken, and (3) the opportunity to call witnesses and present evidence. *Id.* at 564–565. Relevant to this case is the second requirement—that a prisoner be provided a written statement of the evidence relied upon and reason for any action taken as a result of a disciplinary hearing.

The United States Supreme Court clarified that these procedural protections outlined in *Wolff* only apply to the extent necessary to protect substantive rights. *See Washington v. Harper*, 494 U.S. 210, 220 (1990) ("[P]rocedural protections must be examined in terms of the substantive rights at stake.") As the United States Court of Appeals for the Sixth Circuit held, "[f]ailing to follow proper procedures is insufficient to establish an infringement of a liberty interest." *Grinter v. Knight*, 532 F.3d 567, 574 (6th Cir. 2008), citing *Olim v. Wakinekona*, 461 U.S. at 250 ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.")

In *Sandin v. Conner*, the United States Supreme Court held that the only liberty interest a prisoner may protect through Section 1983 is "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. 472, 484 (1995). Many incidents of prison life do not rise to the level of "atypical and significant" and therefore do not implicate a right secured by the Due Process Clause. *See Wolff*, 418 U.S. at 556 ("[T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed.")

Here, Plaintiff claims that the disciplinary action he faced as a result of the RIB hearing was illegitimate due to the lack of evidence cited in the RIB disposition. He claims that as a

result of this process he was placed in TPU for 30 days, was labeled a gang leader, lost his prison job, received an increase in security status, was transferred to a higher security prison, faced economic hardship, and has the potential for his parole eligibility to be affected. (ECF No. 9 at 18–20.) None of these consequences fall within the category of punishments that courts have found to be "atypical and significant," creating a liberty interest actionable under Section 1983. *See Jones v. Baker*, 155 F.3d 810, 812 (6th Cir.1998) (finding that a two-and-one-half year stay in administrative segregation did not "implicat[e] a protected liberty interest") (internal citation omitted); *Guile v. Ball*, 521 F. App'x 542, 544 (6th Cir. 2013) (noting that "simple transfer ... [to] a higher security classification does not trigger a liberty interest"); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir.1997) (holding that a prisoner being held in administrative segregation does not impose "atypical or significant hardship"). *Cf. Wilkinson v. Austin*, 545 U.S. 209 (2005) (transfer to Ohio's "super-max" Level 5 prison created a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 762 (6th Cir. 2008) (indefinite confinement in administrative segregation may create a liberty interest); *Vitek v. Jones*, 445 U.S. 480, 489–90 (1980) (finding a liberty interest in not being involuntarily committed to a mental hospital); *Washington v. Harper*, 494 U.S. 210 (1990) (finding a protectable liberty interest in not being involuntarily subjected to psychotropic drugs).

## IV. CONCLUSION

Even if, as Plaintiff alleges, the RIB hearing was premised on a false conduct report and even if the written statement produced at the conclusion of the RIB hearing did not contain a description of the evidence relied upon was not detailed, Plaintiff's due process rights were not implicated by the RIB proceeding and subsequent disciplinary actions because Plaintiff was not subjected to a significant and atypical hardship. Thus, Plaintiff has failed to state a claim upon

which relief can be granted under 42 U.S.C. § 1983.  It is therefore **RECOMMENDED** that the Defendants' Motion to Dismiss be **GRANTED**.  It is **FURTHER RECOMMENDED** that the Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith and therefore deny Plaintiff leave to appeal *in forma pauperis*.  *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to

specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date: January 2, 2020                    /s/ *Elizabeth A. Preston Deavers*
                                         **ELIZABETH A. PRESTON DEAVERS**
                                         **CHIEF UNITED STATES MAGISTRATE JUDGE**