# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**SEAN M. STEELE,**

    **Plaintiff,**

    v.

                                  Civil Action 2:18-cv-1503
                                  Judge James L. Graham
                                  Chief Magistrate Judge Elizabeth P. Deavers

**LT. NICHOLAS NEFF,** *et al.*,

    **Defendants.**

## REPORT AND RECOMMENDATION

This matter is before the Court for consideration of Plaintiff's Motion for Reconsideration to Amend or Alter Judgment. (ECF No. 36.) For the reasons explained below, the Undersigned **RECOMMENDS** that Plaintiff's Motion be **DENIED**.

## I.

Plaintiff brings his Motion pursuant to Federal Rule of Civil Procedure 59(e). (ECF No. 36 at PAGEID # 340.) A party may move to alter or amend judgment under Rule 59(e) if there is "'(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *CitiMortgage, Inc. v. Nyamusevya*, No. 2:13-CV-00680, 2015 WL 1000444, at *2 (S.D. Ohio Mar. 5, 2015) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). "The term 'clear error' is not well-defined in the Sixth Circuit, but it does 'clearly indicate[ ] that a high standard applies.'" *Forman v. Meridian Bioscience, Inc.*, 387 F. Supp. 3d 791, 796 (S.D. Ohio 2019) (quoting *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 809 (N.D. Ohio 2010), *on reconsideration in part* (July 21,

2010)).  The manifest injustice inquiry "is not meant to allow a disappointed litigant to attempt to persuade the Court to change its mind," but rather it is "a fact-specific analysis that falls squarely within the discretionary authority of the Court."  *Lonardo*, 706 F. Supp. 2d at 809.

"[M]otions to alter or amend, or for reconsideration, are not intended as a mechanism for a plaintiff to relitigate issues previously considered and rejected, or to submit evidence which in the exercise of reasonable diligence could have been submitted earlier."  *Kittle v. State*, No. 2:05-cv-l 165, 2007 WL 543447, at *1 (S.D. Ohio Feb. 15, 2007) (citing *Helton v. ACS Grp.*, 964 F. Supp. 1175, 1182 (E.D. Tenn. 1997)); *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) ("Rule 59(e) allows for reconsideration; it does not permit parties to effectively 're-argue a case.'") (quoting *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)).

The decision to grant relief under Rule 59(e) is left to the district court's sound discretion. *Intera Corp.*, 428 F.3d at 619-20.  Due to the importance of finality in the justice system, a motion to reconsider a final order should be granted only in unique circumstances, such as a complete failure to address an issue or claim.  *Solly v. Mausser*, No. 2:15-cv-956, 2016 WL 74986 at *1 (S.D. Ohio Jan. 7, 2016) (internal citation omitted).

In the subject Order, ECF No. 34, the Court held that Plaintiff had failed to state a claim under 42 U.S.C. § 1983, because he had not shown that the state deprived him of a constitutionally protected interest in life, liberty, or property without due process of law.  (*See generally* ECF No. 34.)  Specifically, the Court found that Plaintiff failed to allege procedural deficiencies in the underlying Rules Infraction Board ("RIB") proceeding, but even if he had, Plaintiff's claim still would fail because Plaintiff had not sufficiently alleged that he had been deprived of a substantive right, such as a liberty right.  (*Id.* at PAGEID ## 333-338.)  The Court

2

rejected each of Plaintiff's arguments, holding that: (1) even if Defendants had failed to follow proper state prison procedures, that would not have constituted an infringement of a liberty interest; (2) Plaintiff's confinement in the Transitional Programming Unit ("TPU") did not implicate a liberty interest; (3) the fact that the RIB decision resulted in Plaintiff being labeled as a gang member did not implicate a liberty interest; (4) the loss of Plaintiff's employment did not implicate a liberty interest; (5) the suggestion that Plaintiff's parole eligibility may be affected by the RIB decision did not implicate a liberty interest; and (6) Plaintiff's increased security classification and transfer to another institution, as a result of the RIB decision, did not implicate a liberty interest.  (*Id.*)  Without a protected liberty interest at issue, Plaintiff was not entitled to Fourteenth Amendment procedural due process.  The Court accordingly granted Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. #9), ECF No. 22, for failure to state a claim for which relief may be granted.  (ECF No. 34 at PAGEID # 338.)

In Plaintiff's Motion for Reconsideration to Amend or Alter Judgment (ECF No. 36), Plaintiff argues he has "established several liberty interest[s]: 1) that he did not receive a fair hearing by an impartial tribunal . . . 2) that he did not receive a written description of the evidence relied [] upon [outside] of the investigative report, by Lt. Byrd . . . and, 3) that he was removed from the general population of the prison and placed in a more reduced level of restricted liberty without a fair hearing."  (ECF No. 36 at PAGEID # 346 (internal citation omitted).)  Plaintiff characterizes these issues as three "Clear Errors of Law" and "Palpable Defect[s]."  (*Id.* at PAGEID ## 342-345.)

First, Plaintiff asserts that the Court's reliance on *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), was in clear error.  (ECF No. 36 at PAGEID ## 342-343.)  Specifically, Plaintiff argues "[t]his Court's reliance upon [*Shehee*] to deny [Plaintiff's] first objection is a clear error

3

of law," because *Shehee* "deals with a State Official in a supervisory role," but Defendant Byrd "was not a supervisor." (*Id.*) Plaintiff states that Defendant Byrd was "the sole person responsible for determining innocence or guilt," and argues that Defendant Byrd "had a duty to be impartial," but his "mindstate before [Plaintiff's] hearing made it impossible for him to be impartial." (*Id.* at PAGEID # 343.)

As a preliminary matter, Plaintiff has raised these arguments in the Complaint and at every stage of the briefing. A motion for reconsideration is not an appropriate vehicle to relitigate these claims. *See Howard*, 533 F.3d at 475 ("Rule 59(e) allows for reconsideration; it does not permit parties to effectively re-argue a case.") (internal quotation omitted). Regardless, Plaintiff misreads *Shehee*, and the Court's reliance on *Shehee* was proper. In *Shehee*, the Sixth Circuit held that four non-supervisory defendants whose "only roles in this action involve the denial of administrative grievances or the failure to act" could not be liable under § 1983. *Shehee*, 199 F.3d at 300. The same holds true for Defendant Byrd here, as Plaintiff affirmatively admitted that Defendant Byrd did not have a supervisory role. (ECF No. 36 at PAGEID # 342 ("Lt. Byrd was not a supervisor.").) The four defendants in *Shehee* could not be liable under § 1983 for "their denial of [plaintiff's] administrative grievances," and the same conclusion applies to Defendant Byrd. *Shehee*, 199 F.3d at 300. Plaintiff's argument is not appropriate for a motion for reconsideration, but it is not well taken regardless.

Next, Plaintiff alleges that it was clear error for the Court to rely on Defendant Neff's conduct report, which Plaintiff contends is unsubstantiated. (ECF No. 36 at PAGEID ## 343-344.) Plaintiff argues the Court's "heavy reliance" on the conduct report violates the decision in *King v. Wells*, 760 F.2d 89 (6th Cir. 1985). (*Id.*) Plaintiff maintains that, under *King*, he was "entitled to a written statement by [Defendant] Byrd as to the evidence relied upon"; "[r]eliance

4

on the investigative report alone is insufficient"; and "a prisoner does not receive a statement of the evidence relied on if he only receives a reference to an investigative report." (*Id.*)

Again, Plaintiff's arguments are not new. The Court already rejected these arguments, indicating that "even assuming the procedural requirements discussed in [*Wolff v. McDonnell*, 418 U.S. 539 (1974)] are applicable in this case (as discussed below, the court concludes they are not), the amended complaint and the attached documents fail to allege facts showing that the disposition report was procedurally deficient in explaining the evidence relied on, or that the conduct report was false for the reason alleged by plaintiff." (ECF No. 34 at PAGEID # 334.) Plaintiff now cites *King* as the controlling authority – as opposed to *Wolff*, as Plaintiff cited in the below briefing – but the outcome is the same because the Sixth Circuit followed the *Wolff* standard in *King*. *See King*, 760 F.2d at 94 (Confirming that "*Wolff* was the controlling law at the time of the prison disciplinary hearing[.]").

Regardless, Plaintiff is mistaken to suggest that the conduct report does not explain what evidence the RIB relied upon in reaching its decision, as the Court's Order detailed all of the evidence cited in the conduct report:

> In response to the disposition form's request for a statement of the facts which explain the RIB's decision, it was stated: "The Board believes the conduct report to be true and factual as written." Doc. 9-3. The conduct report, attached to the amended complaint as Doc. 9-2, states that the inmates who participated in the fight were interviewed, that they admitted to their involvement in the fight, and that they indicated that the fight was over the leadership of the Bloods gang and contraband being brought in by an Aramark staff member. The report indicates that Lt. Neff reviewed video footage of the fight. The conduct report does not state that plaintiff was present during the altercation in the yard. In fact, Lt. Byrd found plaintiff not guilty of actually participating in the fight; plaintiff was only found guilty of engaging in unauthorized group activity. As support for the latter charge, the conduct report indicated that prior to his placement in the TPU, plaintiff had Inmate Reid "move money and unknown contraband over the GTL phone system for an Aramark employee to bring into Reid and turn over to" plaintiff. The report stated that plaintiff was involved in a dispute with Inmate Mayes over leadership of the Bloods, which caused them to split into two groups, and that when plaintiff went to

5

the TPU, Inmate Mayes saw an opportunity to take control of the leadership of the Bloods and their contraband.

(ECF No. 34 at PAGEID ## 334-335.) As the Court explained, however, these explanations were unnecessary, as "there is no constitutionally protected due process violation unless the process complained of results in conditions of confinement which are atypical and pose a significant hardship," which was not the case here. (*Id.* at PAGEID # 336.) Because Plaintiff merely attempts to relitigate the Court's legal analysis, Plaintiff's second "palpable defect" is not well taken.

Finally, Plaintiff asserts that the Court's decision conflicts with *McDougald v. Bear*, No. 1:17-CV-124, 2017 WL 5178764, at *1 (S.D. Ohio Nov. 7, 2017), *report and recommendation adopted sub nom. McDougald v. Baer*, No. 1:17CV124, 2017 WL 5990121 (S.D. Ohio Dec. 4, 2017). (ECF No. 36 at PAGEID ## 344-345.) Plaintiff argues that *McDougald* stands for the proposition that "disputed documents . . . cannot be considered at the juncture of a motion to dismiss[.]" (ECF No. 34 at PAGEID # 345.) Plaintiff contends that the subject conduct report is false because "there is no written statement that confirms the allegations to be supported by evidence," and states that because the plaintiff in *McDougald* "disputed the contents of a false conduct report, the court determined that it had to solely consider the plaintiff's allegations in a light favorable to him," and the Court's failure to do so here constitutes clear error. (*Id.*)

As stated above, Plaintiff is mistaken that "there is no written statement that confirms the allegations to be supported by evidence." (*Id.*) Plaintiff also is mistaken about the substance and the applicability of *McDougald*. In *McDougald*, the plaintiff brought a § 1983 claim for excessive force and medical deliberate indifference. The Court declined to consider a conduct report to rebut plaintiff's allegations of excessive force for purposes of a motion to dismiss. *McDougald*, 2017 WL 5178764, at *3. Here, Plaintiff brings civil rights claims under § 1983,

6

asserting a violation of his Fourteenth Amendment due process rights. As the Court explained, Plaintiff must show he had a protected liberty interest at issue in order to survive the motion to dismiss. (ECF No. 34 at PAGEID # 333.) Because *McDougald* does not address, let alone challenge, whether Plaintiff has failed to show he had a protected liberty interest at issue, Plaintiff's argument is not well taken.

In sum, Plaintiff has failed to meet the high standard to show that "extraordinary circumstances" exist to reconsider the Court's March 5, 2020 Order. Plaintiff's arguments appear to be attempts to relitigate the briefing below, and Plaintiff has failed to show a clear error of law, newly discovered evidence, an intervening change in controlling law, or a need to prevent manifest injustice. *See CitiMortgage, Inc.*, 2015 WL 1000444, at *2.

For the reasons stated above, the Undersigned finds no grounds to reconsider the Court's earlier decision that Plaintiff had failed to state a claim under § 1983. Accordingly, it is **RECOMMENDED** that Plaintiff's Motion for Reconsideration to Amend or Alter Judgment (ECF No. 36.) be **DENIED**.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review of by the District Judge

and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [th defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . ." (citation omitted)).

Date: September 30, 2020     /s/ *Elizabeth A. Preston Deavers*
ELIZABETH A. PRESTON DEAVERS
UNITED STATES MAGISTRATE JUDGE